1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  JUDI BALLINGER,                    )   NO. CV 11-06557 SS
                                       )
12              Plaintiff,             )
                                       )
13        v.                           )   **MEMORANDUM DECISION AND ORDER**
                                       )
14  MICHAEL J. ASTRUE,                 )
    Commissioner of Social            )
15  Security,                          )
                                       )
16              Defendant.             )
    _____)
17

18                              **I.**

19                         **INTRODUCTION**

20

21       Judi Ballinger ("Plaintiff") brings this action seeking to overturn

22  the decision of the Commissioner of the Social Security Administration

23  (hereinafter the "Commissioner" or the "Agency") denying her application

24  for Disability Insurance Benefits ("DIB").  The parties consented,

25  pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned

26  United States Magistrate Judge.  For the reasons stated below, the

27  decision of the Agency is AFFIRMED.

28

**II.**

**PROCEDURAL HISTORY**

On April 22, 2008, Plaintiff (a "younger person", i.e., under age 50)[1] filed an application for DIB under Title II of the Social Security Act. (Administrative Record ("AR") 155-56). Plaintiff alleged a disability onset date of January 1, 1996 on the bases of bipolarity, manic depression, pain in both knees and sciatica. (AR 212). The Agency denied her application on November 20, 2008, and upheld the denial on March 11, 2009. (AR 59, 69). Plaintiff then requested a hearing, which was held before an Administrative Law Judge ("ALJ") on January 7, 2010. (AR 20-49). Plaintiff appeared with counsel and testified. (AR 22-38). Plaintiff's mother also testified. (AR 38-48).

On January 22, 2010, the ALJ issued a decision denying benefits. (AR 10-15). Plaintiff requested review of this decision before the Appeals Council, which was denied on July 7, 2011. (AR 1, 5). Plaintiff filed the instant action on August 16, 2011.

**III.**

**FACTUAL BACKGROUND**

Plaintiff asserts that her disability, including both physical and mental impairments, began in 1996. (AR 212; Complaint Memo. at 1). Plaintiff was covered for DIB through June 30, 2005 (her "date last insured"). (AR 10, 161-70).

---

[1] See 20 C.F.R. § 404.1563(c) (2011) (defining "younger person" as an individual under 50).

Plaintiff testified that she suffers from pain and fluid in her knees, although she takes only Tylenol for pain. (AR 32). She had operations on both knees, (id.), and was prescribed Vicodin for chronic back pain. (AR 32-33). Plaintiff complained about problems with her fine motor skills, but acknowledged that she is able to lift objects such as a gallon of milk. (AR 35-36).

According to Plaintiff's medical records, Dr. Ernesto Natividad began treating her for depression in September 2007. (AR 434). Plaintiff testified that she sees Dr. Natividad every other month for a refill of her anti-depressant medications and discusses her condition with him for fifteen to twenty minutes. (AR 26). Plaintiff does not receive any other regularly scheduled mental health treatment or therapy. (Id.). The medications make her tired. (AR 28, 34). Plaintiff periodically stops taking her medications when she believes her condition has improved, even though her mental health symptoms worsen when she does not take them. (AR 25, 27, 30-31, 37). She admitted that whenever she stops taking her medications, her doctor tells her that she must continue taking them as prescribed. (AR 31). During one period when she was not taking her medications, Plaintiff assaulted an unidentified adult. (AR 30).

Plaintiff also described her work activities. From 1996 to 2009, Plaintiff worked three hours per day as a child care worker for the Long Beach Unified School District. (AR 24 (testified that she stopped doing child care on July 2, 2009), 30 (testified that she was terminated in July 2009 after assault incident), 182 (indicating work for three hours a day), 187 (listing child care position from 1996 to 2009)). She spent

3

the entire three hours standing or walking and would frequently lift
ten-pound objects.  (AR 189).  Long Beach Unified School District fired
Plaintiff from her child care position on July 2, 2009 for the assault
incident, even though it was not related to her job.  (AR 30).
Additionally, Plaintiff also worked from 1987 to 1996 as a security
guard.  (AR 187-88).  In that job, she stood or walked between seven and
eight hours each day and sat between three and five hours each day.  (AR
188).

     Plaintiff's mother also testified at the hearing.  (AR 38-48).  She
stated that Plaintiff sleeps all day, even through loud noises, (AR 41,
44), and experiences regular mood swings, crying fits, and daily bouts
of anger.  (AR 45-47).  Plaintiff's mother generally drives Plaintiff
where she need to go and prepares her meals, but Plaintiff is able to
do some chores like washing dishes.  (AR 43).

     Drs. Jay Jazayeri and George El Khoury treated Plaintiff for her
physical impairments.  Dr. Jazayeri successfully performed orthoscopic
surgery on Plaintiff's right knee on November 9, 2004, (AR 290, 293-94),
and on her left knee on December 28, 2004.  (AR 289, 295-96).  He
reported that Plaintiff could return to work on February 14, 2005.  (AR
289).  His records, which date from July 19, 2004 through March 2, 2005,
do not mention any mental health issues or psychiatric medications.  (AR
289-320).  According to Dr. Jazayeri's records, Dr. El Khoury was

4

treating Plaintiff for back pain as of July 19, 2004. (AR 292). There are no medical records of Dr. El Khoury's treatment in the record.[2]

Medical records documenting Plaintiff's treatment for mental health problems reflect that Dr. Natividad began treating Plaintiff in September 2007 and prescribed a number of medications.[3] (AR 434). Plaintiff also sought treatment at the Mental Health Urgent Care Center at Long Beach ("MHUCC") twice in late 2007. On October 5, 2007, Plaintiff was admitted after she assaulted her husband ("physically/verbally struck out at husband"), (AR 326-30), and was given a thirty day supply of her prescribed medications. (AR 330). On December 5, 2007, Plaintiff visited MHUCC a second time after she had been off her medications for two days. (AR 321-25). An MHUCC physician completed an assessment of Plaintiff on December 11, 2007. (AR 335-41). The physician noted that Plaintiff was depressed, that she stopped taking her medications, and that her history demonstrated increased symptoms off of her medication. (AR 335). The report reflected that Plaintiff had no history of hospitalization for mental health problems. (Id.). According to the report, Plaintiff's mood was dysphoric, her judgments and insight were moderate, and her ability to perform serial

---

[2]   Dr. El Khoury responded to the request for Plaintiff's medical records with another patient's records. (AR 255-88).

[3]   This date is reported in the "subjective" patient history of the medical record for Plaintiff's January 8, 2008 outpatient treatment for coughing at Children's Clinic - Pacific Hospital of Long Beach. (AR 433-34). Medical records produced by CO/M/LA Long Beach Mental Health include eight medication logs signed by Dr. Natividad, (AR 343-350), the oldest of which appears to be dated January 10, 2008. (AR 350).

1   sevens[4] was poor.  (AR 339).  Plaintiff's thought content disturbance,

2   associations, and behavioral disturbances were normal.  (Id.).

3

4       Plaintiff also received treatment at Pacific Hospital of Long Beach

5   twice in early 2009.[5]  On January 8, 2009, Plaintiff visited the

6   hospital clinic for lower back pain.  (AR 432-37).  The treating

7   physician assessed her affect as normal.  (AR 435).  On February 4,

8   2009, Plaintiff was involuntarily admitted to the hospital as a danger

9   to herself. (AR 438-46).  "[Plaintiff] stated that she was noncompliant

10  with her medications for sometime, because she felt that she is doing

11  well and since then she has been deteriorating."  (AR 442).  She told

12  her doctors that even when she tried to be compliant, she would forget

13  to take her medications on a daily basis.  (Id.).  While hospitalized,

14  Plaintiff took her medications as prescribed and became much calmer

15  without experiencing any side effects from the medications.  (AR 445).

16  She said that she had contemplated suicide only because she had not

17  taken her medications.  (Id.).[6]

18  _____

19      [4]  "Serial sevens" is a diagnostic test that asks a patient to
20  count down from one hundred in increments of seven.

21      [5]  The records for these visits indicate only "Children's Clinic,"
    but were sent by the same Medical Records representative who sent
22  records from "Children's Clinic - Pacific Hospital of Long Beach."  (AR
    432, 438).
23

24      [6]  Plaintiff also sent record requests to Drs. Emanuel Devera, (AR
    357-59), and George M. Jayatilaka.  (AR 372-74).  Dr. Devera's staff
25  indicated that Dr. Devera had last seen Plaintiff in 2004 but that his
    office "no longer [had] the patient's chart."  (AR 359).  Dr.
26  Jayatilaka's staff indicated that Dr. Jayatilaka had last seen Plaintiff
    on December 8, 2004 but that the "chart has been purge out [sic] no
27  longer in this office."  (AR 373).  Both requests asked for information
    relevant to Plaintiff's alleged impairments of "bipolar, manic
28  depression, pain in both knees, [and] sciatica."  (AR 358, 374).  The

                                    6

1    Four doctors completed evaluations for Plaintiff's disability
2 claim.  Drs. R. E. Brooks and G. Johnson completed Psychiatric Reviews
3 on November 6, 2008 and March 3, 2009, respectively.  (AR 375-85, 411-
4 21).  Both doctors determined that there was insufficient evidence prior
5 to the date last insured to make any determination.  (AR 375, 385, 411,
6 421).  Neither doctor completed the section on functional limitations.
7 (AR 383, 419).

8

9    Dr. E. L. Gilpeer completed a Physical Residual Functional Capacity
10 Assessment on November 17, 2008.  (AR 386-91).  Dr. Gilpeer found
11 insufficient evidence to establish any specific physical limitations.
12 (AR 386, 388).  Dr. V. Phillips completed another Physical Residual
13 Functional Capacity Assessment on March 10, 2009.  (AR 404-10).
14 According to Dr. Phillips, Plaintiff was able to frequently lift twenty-
15 five pounds and to sit for six hours of an eight-hour work day, and had
16 no push/pull limitations.  (AR 405).

17

18                              **IV.**

19                **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

20

21    To qualify for disability benefits, a claimant must demonstrate a
22 medically determinable physical or mental impairment that prevents her
23 from engaging in substantial gainful activity[7] and that is expected to

24

25 record does not indicate the type of treatment these physicians
26 provided.

27    [7]  Substantial gainful activity means work that involves doing
28 significant and productive physical or mental duties and is done for pay
or profit.  20 C.F.R. § 404.1510.

                                7

result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 404.1520.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing her past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

8

1  Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
2  949, 953-54 (9th Cir. 2001); 20 C.F.R. § 404.1520(b)-(g)(1).

3

4      The claimant has the burden of proof at steps one through four, and
5  the Commissioner has the burden of proof at step five.  Bustamante, 262
6  F.3d at 953-54.  If, at step four, the claimant meets her burden of
7  establishing an inability to perform the past work, the Commissioner
8  must show that the claimant can perform some other work that exists in
9  "significant numbers" in the national economy, taking into account the
10  claimant's Residual Functional Capacity ("RFC"), age, education and work
11  experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 404.1520(g)(1).

12                                    **V.**

13                          **THE ALJ'S DECISION**

14

15      The ALJ employed the five-step sequential evaluation process and
16  concluded at step four that Plaintiff was not disabled within the
17  meaning of the Social Security Act.  (AR 10-15).  At step one, the ALJ
18  found that Plaintiff had not engaged in substantial gainful activity
19  from the alleged onset date of January 1, 1996, through her date last
20  insured of June 30, 2005.  (AR 12).  At step two, he found that
21  Plaintiff had severe impairments of "degenerative disc disease of the
22  bilateral knees and depression (mild)."  (Id.).   At step three, the
23  ALJ found that "[t]hrough the date last insured, [Plaintiff] did not
24  have an impairment or combination of impairments that met or medically
25  equaled one of the listed impairments . . . ."  (Id.).

26

27      At step four, the ALJ found that Plaintiff had the RFC to perform
28  "medium work . . . with the occasional climbing of stairs" and was

                                      9

capable of performing her past relevant work as a security guard. (AR 14). The ALJ also addressed Plaintiff's alleged mental health impairment. He noted that there were "no medical records [regarding Plaintiff's mental health] prior to her date last insured, June 30, 2005." (AR 13). The ALJ found that Plaintiff had "mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace with no episodes of decompensation, each of extended duration." (AR 14). Based upon the absence of medical evidence and Plaintiff's mild limitations, the ALJ concluded that Plaintiff did not have a severe mental impairment. (Id.).

The ALJ based his conclusions on the medical consultants' assessments because they were "consistent with the objective findings and they [were] not rebutted by any treating source." (AR 13). The ALJ gave no weight to Plaintiff's subjective complaints insofar as they were inconsistent with the objective evidence and the findings of the medical consultants. (Id.). The ALJ also found that Plaintiff's mental problems were caused by her periodic failure to take her medications, and thus would not affect her RFC. (AR 14).

Because the ALJ found that Plaintiff could perform her past relevant work, he concluded that Plaintiff was not disabled during the covered period. (Id.).

10

# VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

# VII.

## DISCUSSION

Plaintiff contends the ALJ (1) failed to properly consider Plaintiff's mental impairment, (Complaint Memo. at 2-4), and (2) erroneously found that Plaintiff's testimony was not entirely credible.

11

1  (Id. at 4-7).  The Court recognizes that the ALJ's decision contained
2  contradictory statements regarding Plaintiff's mental impairment.
3  Ultimately, however, this error is immaterial because the medical
4  evidence shows that Plaintiff's mental impairment was not severe during
5  the relevant time period.  The Court further finds that even if the ALJ
6  erred regarding Plaintiff's mental impairment, any such error was
7  harmless.  Finally, the Court rejects Plaintiff's contention that the
8  ALJ's credibility determination was error.

9

10  **A.    No Remand Is Required Based Upon The ALJ's Findings Regarding**
11        **Plaintiff's Alleged Mental Impairment**

12

13       Plaintiff claims that the ALJ failed to properly consider her
14  mental impairment.  (Complaint Memo. at 2-4).  Specifically, Plaintiff
15  contends that the ALJ reached "completely contradictory conclusions" by
16  first finding that Plaintiff's depression was severe, but later
17  determining that Plaintiff does not have a severe mental impairment.
18  (Complaint Memo. at 3) (citing AR 12, 14).  Further, Plaintiff contends
19  that the ALJ's finding that Petitioner's mental impairment was not
20  severe lacked evidentiary support.  (Id. at 4).  However confusing the
21  ALJ's "contradictory conclusions" may be, the Court finds the statements
22  to be harmless because (1) the record does not establish that
23  Plaintiff's mental impairment was severe during the covered period and
24  (2) the record demonstrates that her alleged mental impairment, even if
25  deemed "severe," was not disabling when Plaintiff took her medication.

26

27

28

12

### 1.   The ALJ's Severity Statements

The ALJ determined at step two that "[t]hrough the date last insured, [June 30, 2005,] the claimant had the following severe impairments: . . . depression (mild) . . . ."  (AR 12).  Nonetheless, the ALJ concluded at step four that Plaintiff "does not have a severe mental impairment."  (AR 14).  While potentially confusing, these statements are ultimately not material to the outcome and do not require remand.

By its own terms, the evaluation at step two is a <u>de minimis</u> test intended to weed out only the most minor of impairments.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153-54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); <u>Edland v. Massanari</u>, 253 F.3d 1152, 1158 (9th Cir. 2001) (the step two inquiry is a <u>de minimis</u> screening device to dispose of groundless claims) (citing <u>Smolen</u>, 80 F.3d at 1290).  The mental RFC assessment used at steps four and five of the evaluation process, on the other hand, requires a more detailed analysis.  <u>See</u> Social Security Ruling 98-8p, 1996 WL 374184, at *4 ("The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in . . . the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].").[8]

_____

[8]   Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the five-step sequential evaluation process with additional regulations intended to assist the ALJ in determining the severity of mental impairments.  <u>Maier v. Comm'r of the Soc. Sec. Admin.</u>, 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam) (citing 20 C.F.R. § 416.920a).  If

1    While Plaintiff stated in her disability report that she began
2    seeking treatment at CO/M/LA Long Beach Mental Health for panic attacks
3    and mood swings as early as 2002, (AR 214), Plaintiff's medical records,
4    including those produced by CO/M/LA Long Beach Mental Health, provide
5    no evidence of any mental health problems during the relevant period.
6    (See AR 335-56).   Plaintiff's first mental health records are from
7    October and December 2007, two years after her 2005 date last insured.
8    (AR 326, 340).   Plaintiff started seeing Dr. Natividad for depression
9    in September 2007.   (AR 434).   The first medical record documenting
10   treatment for any mental health issue is from her October 2007 visit to
11   MHUCC, in which a treating physician noted that she had attempted
12   suicide approximately one year prior.  (AR 326).   Further, Plaintiff's
13   testimony did not reveal any debilitating mental health issues prior to
14   the July 2009 assault.  (AR 22-38).   Finally, Plaintiff answered "no"
15   to the question "[h]ave you been seen by a doctor/hospital/clinic or
16
17   _____
18   the claimant has a medically determinable impairment, the ALJ must "rate
     the degree of functional limitation resulting from the impairment(s)"
19   for the four broad functional areas:  activities of daily living; social
     functioning;  concentration,  persistence  or  pace;  and  episodes  of
20   decompensation.   20 C.F.R. § 404.1520a(b)(2), (c)(3).   "The decision
     must show the significant history, including examination and laboratory
21   findings,  and  the  functional  limitations  that  were  considered  in
     reaching a conclusion about the severity of the mental impairment(s),"
22   including "a specific finding as to the degree of limitation in each of
     the functional areas . . . ." Id. § 404.1520a(e)(4).   However, an ALJ's
23   failure to follow the required procedure mandates remand only if the
     claimant has a "colorable claim of a mental impairment."   Keyser v.
24   Commissioner of Social Security, 648 F.3d 721, 726 (9th Cir. 2011); see
     also Hoopai v. Astrue, 499 F.3d 1071, 1077-8 (9th Cir. 2007) (affirming
25   denial of benefits despite ALJ's failure to document his considerations
     underlying  the  functional  findings).   Here,  the  ALJ  made  express
26   findings concerning the four functional areas, though arguably not in
     the degree of detail outlined in 20 C.F.R. §§ 416.920a and 404.1520a.
27   (See AR 14, ¶ 5).  Thus, remand is not required.
28

14

anyone else for emotional or mental problems that limit your ability to work?" on her Disability Report.  (AR 214).

Plaintiff failed to demonstrate that she had a medically determinable mental impairment prior to her date last insured.  See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (failure to provide evidence of mental impairment prior to date last insured supports finding of non-disability).  The ALJ's purportedly confusing statements regarding her mental disability are immaterial as there is no evidence in the record of a severe mental impairment during the relevant time period.  The ALJ made express findings regarding Plaintiff's functional limitations in his decision and therefore any failure to make more detailed express findings under 20 C.F.R. § 404.1520a was harmless error.  See Molina v. Astrue, ___ F.3d ___, 2012 WL 1071637 at * 7 (9th Cir. April 2, 2012) (errors were harmless where it is clear they did not alter ALJ's decision); Carmickle v. Comm'r of the Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (if the ALJ's error was inconsequential to the ultimate nondisability determination, no remand required); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.").

**2.   The ALJ's Residual Functional Capacity Determination**

Even if Plaintiff's mental impairment were severe, she cannot establish disability based upon her mental impairment because the record discloses that whatever mental condition she had did not affect her ability to work when she took her medications.  A mental health problem is not a disability when it can be controlled by medication.  Warre v.

1   <u>Comm'r of the Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006)
2   ("Impairments that can be controlled effectively with medication are not
3   disabling.").

4

5       Here, the ALJ found that Plaintiff's "periods of emotional problems
6   have been related to her non-compliance with medication."  (AR 14).
7   Plaintiff admitted in her testimony that her symptoms were worse when
8   she failed to take her medications.  (AR 27, 30, 37).  She also stated
9   that she was fired from her job as a child care worker because of an
10  incident that occurred when she stopped taking her medications.  (AR
11  30).  Plaintiff's medical records indicated that her symptoms were under
12  control when she took her medications, that she only became suicidal
13  because she stopped taking her medications, and that she sometimes
14  forgot to take her medications on a daily basis.  (AR 442, 445).

15

16      Moreover, Plaintiff's contention that her alleged mental impairment
17  was disabling is undermined by her record of work throughout the covered
18  period.  She worked for three hours each day as a child care worker.
19  (AR 23-24, 187, 189).  She denied that her conditions had ever caused
20  her to work fewer hours, change her job duties, or make any job-related
21  changes.  (AR 212).  It is clear that any mental impairment Plaintiff
22  had did not impact her work activities.  Even if Plaintiff's mental
23  impairment were severe, it would not have changed the ALJ's finding
24  regarding her RFC as her condition was well-controlled with medication.

25

26      Thus, to the extent that the ALJ erred, it was harmless error and
27  no remand is required.  <u>See</u> <u>Carmickle</u>, 533 F.3d at 1162; <u>Burch</u>, 400 F.3d
28  at 679.

16

1    **B.    The ALJ Provided Clear And Convincing Reasons For Rejecting**
2    **Plaintiff's Subjective Testimony**

3

4         Plaintiff contends that the ALJ erred by rejecting her testimony.
5    (Complaint Memo. at 4-7).  Specifically, Plaintiff asserts that the ALJ
6    "failed to specifically explain which parts of [P]laintiff's statements,
7    if any, are credible and which parts were not credible."  (Id. at 5).
8    The Court disagrees.

9

10        Whenever an ALJ's disbelief of a claimant's testimony is a critical
11   factor in a decision to deny benefits, the ALJ must make explicit
12   credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir.
13   1990); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990)
14   (implicit finding that claimant was not credible is insufficient).
15   Unless there is affirmative evidence showing that the claimant is
16   malingering, the ALJ's reasons for rejecting the claimant's testimony
17   must be "clear and convincing."  Lester v. Chater, 81 F.3d 821, 834 (9th
18   Cir. 1995) (as amended).  As long as a claimant offers evidence of a
19   medical impairment that could reasonably be expected to produce pain,
20   the ALJ may not require the degree of pain to be corroborated by
21   objective medical evidence.  Bunnell v. Sullivan, 947 F.2d 341, 346-47
22   (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1282.

23

24        The ALJ can, however, reject a claimant's testimony regarding the
25   severity of her symptoms if he points to clear and convincing reasons
26   for doing so.  See Smolen, 80 F.3d at 1283-84.  To determine whether a
27   claimant's testimony regarding the severity of her symptoms is credible,
28   the ALJ may consider, among other things: (1) ordinary techniques of

17

1  credibility evaluation, such as the claimant's reputation for lying,

2  prior inconsistent statements concerning the symptoms, and other

3  testimony by the claimant that appears less than candid; (2) unexplained

4  or inadequately explained failure to seek treatment or to follow a

5  prescribed course of treatment; and (3) the claimant's daily activities.

6  Id. at 1284.  If the ALJ's credibility finding is supported by

7  substantial evidence in the record, the court may not engage in

8  second-guessing.  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

9

10  Here, the ALJ specified his reasons for rejecting Plaintiff's

11  testimony.  He rejected her "allegations that she [could not] do her

12  past work because her allegations are not consistent with the objective

13  findings or the evidence of record." (AR 13).  Further, he found that

14  "her subjective complaints [we]re not sufficiently credible to require

15  [him] to accept her allegation of excess pain and limitation." (Id.).

16

17  The ALJ also provided clear and convincing reasons for his

18  findings.  First, the ALJ found that there was "very little evidence of

19  treatment prior to her date last insured (June 30, 2005)." (AR 14).

20  The record indicates that Plaintiff had two successful knee surgeries

21  during the covered period and was cleared to return to work less than

22  two months after the second surgery. (AR 289-90).  Plaintiff appears

23  to have had one follow-up examination on March 2, 2005, and there is no

24  evidence that Plaintiff sought any other treatment for her knees during

25  the covered period. (AR 289).  Furthermore, the record does not contain

26  any mental health medical records prior to 2007.  See supra Part

27  VII.A.1.  Failure to seek treatment is a factor which an ALJ may

28

18

1  consider in a credibility determination.  Smolen, 80 F.3d at 1284.  The

2  ALJ's first reason for doubting Plaintiff's credibility was proper.

4      Second, the ALJ found that Plaintiff had "bilateral knee surgeries

5  without any complications."  (AR 14).  This was supported by the

6  evidence from her treating physician.  Dr. Jazayeri's records indicate

7  that Plaintiff first complained of knee problems in July 2004.  (AR

8  292).  He operated on each of her knees at the end of 2004 and cleared

9  her to return to work on February 14, 2005.  (AR 289).  Thus, the

10 records contradict Plaintiff's contention that she was unable to work

11 due to any pain in her knees.  Substantial evidence supports this reason

12 for rejecting Plaintiff's testimony.

14      Third, Plaintiff "admitted that she worked as a child care

15 attendant until July 2009 when she was fired for assaulting an

16 individual (per testimony)."  (AR 14).  Plaintiff admitted that she

17 worked three hours each day during the covered period, (AR 23-24, 187,

18 189), performing activities that required standing and walking for the

19 full three hours.  (AR 189).  Plaintiff's alleged impairments when she

20 took her medications never caused her to work fewer hours, change her

21 job duties or make any job-related changes.  (AR 212).  Plaintiff

22 further testified that she was fired from the job because she committed

23 an assault as a result of being off her medications.  (AR 30).  The ALJ

24 may consider a claimant's work record in assessing her credibility.

25 Thomas, 278 F.3d at 959.  The ALJ properly concluded that Plaintiff's

26 claim that she could not work because of physical or mental impairments

27 was not credible.

19

1    Thus, the Court concludes that the ALJ provided clear and
2 convincing reasons for his credibility findings.  Because the ALJ did
3 not err in rejecting Plaintiff's claim, remand is not required.

**VIII.**

**CONCLUSION**

8    Consistent with the foregoing, and pursuant to 42 U.S.C. § 405(g),
9 IT IS ORDERED that judgment be entered AFFIRMING the decision of the
10 Commissioner and dismissing this action with prejudice.  IT IS FURTHER
11 ORDERED that the Clerk of the Court serve copies of this Order and the
12 Judgment on counsel for both parties.

DATED: April 3, 2012

                                    _____/S/_____
                                    SUZANNE H. SEGAL
                                    UNITED STATES MAGISTRATE JUDGE

20